CITY OF AMARILLO v. W. L. SLAYTON & CO. (No. 1463.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 5, 1919.)

1. MUNICIPAL CORPORATIONS ⟨key⟩921(1)—BID FOR BOND ISSUES—CONDITIONS—APPROVAL OF ATTORNEY.

Objection of attorney for bidder for city paving bonds to legality of issues that notice of election provided that bonds amounting to $50,-000 payable serially, one to forty years, should be issued, while two series actually were issued, one for $40,000, from one to forty years, and one for $10,000, one to ten years, held not trivial, bid having been conditional upon approval of issues by attorney.

2. MUNICIPAL CORPORATIONS ⟨key⟩918(3) — ISSUANCE OF BONDS—ELECTION NOTICE.

If a bond election vote is cast on notice of one kind of bonds, bonds with different terms are not authorized.

3. MUNICIPAL CORPORATIONS ⟨key⟩921(1)—BIDS —CONDITIONS.

On stipulation in bid for purchase of city bonds that transcript of proceedings leading up to issuance of bonds should be satisfactory to bidder's attorney, where attorney's opinion was unfavorable there was no obligation on bidder.

4. MUNICIPAL CORPORATIONS ⟨key⟩921(1) — BONDS—APPROVAL BY BIDDER'S ATTORNEY.

Where bidder for municipal bonds conditions his bid on satisfaction of attorney with transcript of proceedings leading up to issuance of bonds, and attorney's unfavorable opinion is assailed by city as fraudulent, or mere pretense, burden is on city to prove such matter or matters of fact.

5. MUNICIPAL CORPORATIONS ⟨key⟩921(1) — BONDS — UNFAVORABLE OPINION AS TO LEGALITY—BAD FAITH—SUFFICIENCY OF EVIDENCE.

In action by bidder for city paving bonds to recover good faith money deposited, check having been cashed by city after bidder's attorney reported unfavorably as to legality of issue, evidence held insufficient to justify finding that bidder's attorney acted in bad faith.

6. MUNICIPAL CORPORATIONS ⟨key⟩921(1) — BONDS—FORFEIT OF GOOD FAITH MONEY— SATISFACTION OF ATTORNEY.

Where satisfaction of attorney of bidder for city paving bonds with bond issue was made condition to bidder's obligation, his good-faith money was not forfeited to city if the condition was not complied with by furnishing attorney transcript of proceedings leading up to bond issue which should satisfy him.

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

### 7. MANDAMUS ⊚➡154(2)—PETITION.

Mandamus should not be granted unless the petition shows every fact necessary to entitle relator to the relief sought.

### 8. JUDGMENT ⊚➡250—CONFORMITY TO PLEADING—MONEY DEMAND AGAINST CITY.

In suit against city by bidder for paving bonds to recover good-faith money obtained by city by cashing check after bidder's attorney had reported unfavorably as to legality of issue, judgment ordering mayor, city manager, and commissioners to provide by taxation to pay sum recovered, *held* without support in pleadings to that extent.

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by W. L. Slayton & Co. against the City of Amarillo. From a judgment for plaintiff, defendant appeals. Judgment reformed, and as reformed affirmed.

Kimbrough, Underwood & Jackson, of Amarillo, for appellant.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellee.

HUFF, C. J. Prior to the 15th day of March, 1917, the city manager of the city of Amarillo published a notice that he would receive sealed bids for two separate paving bond issues, one for $10,000 and the other for $40,000, requiring the bidders to tender with their bids certified checks, one for $200 and the other for $800. Slayton & Co., of Toledo, Ohio, having learned of such notice, after considerable correspondence submitted the following proposition:

"M. C. Hardin, City Mgr., Amarillo, Texas.

"Dear Sir: For $10,000 paving bonds to be issued by the city of Amarillo, Texas, to bear date of March 14th, 1917, to mature as specified in the Notice to Bond Buyers, copy of which notice you have furnished us, to bear interest at the rate of 5 per cent. per annum, payable annually, both principal and interest being payable at the city depository, Amarillo, Texas, or at some bank in the City of New York, N. Y., said bonds to be in the denomination of $1,000.00 each, we will pay you when delivered to us in Toledo, Ohio, the par value of said bonds, plus accrued interest to date of delivery, plus a premium of $15.70 on each $1,-000.00, or the total premium of $157.00.

"For $40,000 paving bonds to be issued by the City of Amarillo, Texas, to bear date of March 15, 1917, to mature as specified in the Notice to Bond Buyers, a copy of which notice you have furnished us, to bear interest at the rate of 5 per cent, per annum, payable annually, both principal and interest being payable at the city depository, Amarillo, Texas, or some bank in the city of New York, N. Y., we will pay you when delivered to us in Toledo, Ohio, the par value of said bonds plus accrued interest to date of delivery, plus a premium of $50.71 on each $1,000 of said bonds, or the total premium of $2,028.40.

"Prior to taking up and paying for said bonds, we are to be furnished with a full and complete certified transcript of the record of proceedings leading up to and culminating in their issuance and delivery to the satisfaction of our attorneys.

"We inclose herewith resolution of award form, which kindly have adopted, and after it has been signed and sealed with the corporate seal, return to us.

"We inclose two certified checks for $200 and $800 respectively, to be held by you as a guaranty that we will carry out the terms of this bid, if it is accepted, and to be returned to us in the event of its rejection.

"In any event, kindly furnish us with a list of the bids and bidders, by means of the inclosed form.

"Very truly yours,
"W. L. Slayton & Company."

Several other parties also placed bids with the city manager. Slayton & Co., being the highest bidder, were awarded the issue of bonds. In compliance with his proposition he called for a transcript of the records of proceedings leading up to, and culminating in, the issues of the bonds, to be submitted to his attorney for examination and satisfaction. After some delay the transcript was procured, but was first submitted to the Attorney General's Department of the state of Texas, who approved the issuance of the bonds, and gave his certificate to that effect, and the bonds were then registered with the Comptroller of the state of Texas, and the transcript, together with the certificate of the Attorney General, was forwarded to Slayton & Co., which it submitted to their attorney, H. E. Thurston, who upon examination gave the following opinion:

"Harry E. Thurston, Attorney at Law, Toledo, Ohio.
"April 24, 1917.
"W. L. Slayton & Co., Toledo, Ohio:
"Re $40,000 Amarillo, Texas, paving bonds.
"Re $10,000 Amarillo, Texas, paving bonds.
"Gentlemen: At your request I have examined the transcript of the record leading up to the issuance of the above bonds, one issue of $40,000 in denominations of $1,000 each, bearing interest at the rate of 5 per cent. per annum, maturing serially one to forty years, and one issue $10,000, bearing interest at the rate of 5 per cent. per annum, in denomination of $1,000 each, maturing one to ten years. The charter of the city of Amarillo, Texas, art. 4, section 1, provides that 'due notice of such election shall be published once each week for three consecutive weeks in one or more newspapers published in Amarillo, which said notice shall state the nature and purpose of said election.' Notice of the election was published in the Daily Panhandle on the 15th, 22d, and 29th day of January. Said published notice provides that bonds amounting to $50,000, payable serially from one to forty years after date, shall be voted upon. Later by ordinance the $50,000 bonds were divided into two issues, one for $40,000 maturing serially one to forty years and the other for $10,000 maturing se-

rially one to ten years. Such notice does not identify and legally describe these two issues, and it is my opinion that such notice should have definitely described these two issues as was provided later by ordinance. One issue of bonds was voted upon with one maturity, while two issues are now provided for, with two distinct maturities. For this reason I am therefore unable to approve these bonds.

"Your attention is also called to the statement entitled, 'Information Relative to Bond Issues,' dated February 16, 1917, wherein the assessed valuation is set forth as $9,000,000. The statement is signed by M. H. Hardin, City Manager. The transcript states that the assessed valuation of said city is $8,827,506.

"Regretting that it is impossible to give you my approving opinion, I am,

"Respectfully yours."

Upon the disapproval of the transcript by Thurston, Slayton & Co. notified the city of such fact, and requested the return of their two checks, one for $200 and the other for $800. This the city declined to do, and proceeded to collect the same; but by notice to the bank the appellee succeeded in stopping payment on the $200 check, but failed to stop payment on the $800 check, which appears to have been collected by the city; and this suit is by Slayton & Co. to recover that sum of money, together with interest. The city, by answer, set up the fact of the advertising for bids, the acceptance of Slayton's bid, and the issuance of the bonds, and the fact that the Attorney General had approved the bonds as valid obligations against the city, and that the opinion of the attorney that they were invalid for the reason stated by him was not made in good faith, but that it was arbitrary and unwarranted; and the city also sought to recover the $200, evidenced by the check upon which payment was stopped; and also sought to recover the difference between the bid made by Slayton on the bonds over and above the face value of the bonds, which bonds it was alleged they were subsequently forced to sell at such face value, the amount of which they claimed to be $2,185.40. After the introduction of the evidence the trial court instructed a verdict for appellee, Slayton, and upon the verdict so rendered entered judgment .for appellee for the sum of $800 and interest.

Appellee asserts that the evidence was sufficient to carry the case to the jury, and relies upon circumstances to that effect. The appellee and the attorney testified that they were acting in good faith, and that the opinion given by the attorney was given in good faith, etc. It seems from the testimony that Thurston was an attorney for Slayton & Co., and officed in the same building with that company; that he possibly prepared the proposition for Slayton, signing Slayton & Co.'s name, by himself; and that the transcript of the proceedings of the city of Amarillo, preceding the issuance of the bonds, was presented to him on one day, and on the next day he gave to the appellee his written opinion heretofore set out. It appears that, after the bid was accepted by the city, a declaration of war between this country and Germany was declared, and the market value of municipal bonds declined. The list of the other bidders for the bonds is set out in the record, and it is shown that the appellee bid a premium at least one-third more than the next highest bidder, and that after the acceptance of the bid the appellee wrote appellant for the list and the bids made by other parties; and it is claimed also as a circumstance that, in answering the interrogatories propounded to Slayton and Thurston, Thurston read over with Slayton the interrogatories, and seems to state that he explained to him certain legal questions. This, perhaps, will be sufficient statement of the facts to understand the opinion.

The appellant assigns errors attacking the action of the court in instructing the verdict and in failing to submit an issue to the jury as to whether or not Thurston, in disapproving the transcript furnished him, acted in good faith, or whether he acted arbitrarily and fraudulently, and also attacks the verdict and the failure to submit the question as to Slayton's good faith.

[1, 2] We do not find in this record a certified transcript of the record of the proceedings from the city of Amarillo leading up to the issuance of the bonds, or the one furnished by the city to Slayton & Co., or to the Attorney General, upon which his certificate was issued. The only statement with reference to what was contained in the one examined by H. E. Thurston, as attorney for appellee Slayton, is that set out in his opinion heretofore quoted. It will be perceived he states that the bond issue was one for $40,000, in denominations of $1,000 each, bearing interest at the rate of 5 per cent. per annum, maturing serially, one to forty years, and one issue of $10,000, the same rate of interest and denominations, maturing one to ten years; that the notice of election provides that bonds amounting to $50,000, payable serially, one to forty years; that later, by ordinance, the $50,000 bonds were divided into two series—one for $40,000, maturing serially, one to forty years, and the other for $10,000, maturing serially, one to ten years; that the said notice of election does not identify and legally describe these two issues. He quotes from the city charter, art. 4, § 1, that "due notice of such election shall be published once each week for three consecutive weeks, in one or more newspapers, * * * which notice shall state the nature and purpose of said election." Mr. Thurston gave it as his opinion that such notice should have definitely described the two issues, as was provided later by ordinance. "One issue of bonds were voted upon with one maturity while two issues are now provided for with two distinct maturities." Section 1, art. 4, of the charter, also

provides: "Before the issuance of any bonds the same shall be submitted to a vote of the qualified property tax paying voters of the city, and should a majority at such election vote in favor of issuing the bonds," etc.; also it is provided that in the issuance of bonds that a levy of tax be made to pay the interest and create a sinking fund, and that they could not be issued for a period of time to exceed forty years. "All such bonds shall be submitted to the Attorney General of the state for his approval and the Comptroller for registration, as provided by the state law, provided that any such bonds after approval may be issued by the city, either optional or serial, or otherwise, as may be deemed advisable by the governing authority." It is urged in this case that the opinion of the attorney for appellee was arbitrary, unreasonable, and frivolous, and that the evidence raises the issue of bad faith on his part in giving the opinion. We think if the transcript submitted to the attorney showed as stated in his opinion (and this is not shown to be untrue), the question raised by him presented a serious question, and one which a cautious attorney would not treat lightly or advise his client to disregard. Whether he was correct or not, or whether the courts would finally uphold the issue of the bonds or not, the objection was not trivial or unreasonable. This court held, speaking through Mr. Justice Boyce:

"It would be dangerous to hold that the commissioners' court could recite in its order for the election one purpose or proposition, and by some other action or order, not made a part thereof, and not referred to in the official notice of the election, inject into the proposition limitations or conditions so that the actual result of the election would be to carry a different proposition from that actually voted on according to the official record and notices of the proposition submitted." Grayson County v. Harrell, 202 S. W. 160.

In this holding he followed the ruling of the Supreme Court of this state in the case of Moore v. Coffman, 200 S. W. 374, and the Ft. Worth Court of Civil Appeals, Id., 189 S. W. 94. Our state statute with reference to giving notice to voters on bond issued is contained in article 606, R. C. S., and is more specific than that of the charter of the city on that subject. Nevertheless "due notice" must be given under the city charter. Under the state statute it has been held bonds payable in forty years and redeemable in ten years are unauthorized by a vote on issuing bonds payable in forty years and redeemable in five years. Simpson v. Nacogdoches, 152 S. W. 858. As we conceive it, the purpose of the notice is to inform the voter on the proposition upon which he is called to cast his ballot. If the vote cast is upon notice of one kind of bond, and the city issues another bond, with different terms, such bond is issued without having been submitted to the voters as the city charter requires. The appellant asserts that under the certificate of the Attorney General all defects, except forgery or fraud, or the question of a bond issue in excess of the limit fixed by the Constitution, or issued contrary to the provisions of the Constitution, are cured. It should be noted that the statute, art. 625, only makes the certificate of the Attorney General as to the bonds "prima facie valid and binding obligations" in every action or suit or proceeding in which their validity is brought into question. That article also has a proviso that the only defense which can be made to them is forgery or fraud and their unconstitutionality. The articles of the statute require the certificate to be obtained before the sale of the bonds. The question, it seems to us, which would naturally suggest itself to the mind of an examiner is whether his client before the purchase of the bonds, and before the payment therefor, having learned that the bonds had been issued illegally, could under such facts claim estoppel by virtue of the statute and the Attorney General's certificate; or whether he might not be charged with participating in a fraud in procuring the circulation of the bonds of the municipality which had been illegally issued. Whatever the law or rule may be, or would be determined to be by the courts, under the circumstances surrounding the transcript furnished the attorney for examination, we do not think the objection so made by him trivial or unreasonable. We think, if the transcript was as Mr. Thurston stated it, that, as an honorable lawyer, his duty to his client required him to point out the defect. City of San Antonio v. Rollins, 127 S. W. 1166; Landrum v. Buford, 29 Tex. Civ. App. 62, 67 S. W. 1066.

[3] The stipulation in the proposition or bid for the purchase of the bonds, to the effect that the transcript of the proceedings leading up to the issuance of the bonds should be satisfactory to the appellee's attorney, was, we think, a condition precedent necessary to obligate appellee to take the bonds. Such provisions as contained in this contract are usually sustained by the courts. The language used in this contract required the approval by the appellee's attorney of the bond issue, and this was a condition precedent to the completion of the purchase.

"If a contract of sale of something already existing is expressly made subject to the approval of the purchaser, or of some one for him, and such approval involves personal judgment or opinion, the person whose judgment is required is made the sole arbiter, and his decision is conclusive, provided he really passes upon the question, and reaches a conclusion honestly, whether his conclusion is right or wrong. The parties have stipulated for his opinion, not for the decision of the judge or jury, and there is no such reason for reviewing the opinion as in a different class of cases hereinafter referred to. In fact, justice requires that the party who has sought to protect

himself by such a stipulation be afforded the protection intended." Thurman v. City of Omaha, 64 Neb. 490, 90 N. W. 253; Sanger v. Slayden, 7 Tex. Civ. App. 605, 26 S. W. 847.

[4] When the opinion so given is assailed as fraudulent, not in good faith, or a mere pretense, the burden is on him who assails it. Fraud is not presumed, and, though it may be inferred from circumstances, such inference must not be guesswork or conjecture, but must be a rational and logical deduction from the circumstances found. Authorities above cited; and we also cite the following cases bearing on the question here involved, some of them almost identical with the facts in this case: U. S. Trust Co. v. Town of Guthrie Center (Iowa) 165 N. W. 188; City of Great Falls v. Theis et al. (C. C.) 79 Fed. 943; Kissell, Kinnicutt & Co. v. Joint Sch. Dist. No. 1, 165 Wis. 654, 163 N. W. 167; Trowbridge v. City of New York, 24 Misc. Rep. 517, 53 N. Y. Supp. 616; Webb & Co. v. Trustee of Morganton Graded School, 143 N. C. 299, 55 S. E. 719; Church v. Shanklin, 95 Cal. 626, 30 Pac. 789, 17 L. R. A. 207; Allen v. Pockwitz, 103 Cal. 85, 36 Pac. 1039, 42 Am. St. Rep. 99; Thompson v. Dickerson, 68 Mo. App. 535; Flanagan v. Fox, 6 Misc. Rep. 132, 26 N. Y. Supp. 48.

The appellee, as a condition precedent to the purchase of the bonds, was entitled to the favorable opinion of his lawyer. The opinion being adverse to the legality of the bonds under appellee's proposition, there could be no obligation on his part to take the bonds at the price bid, and his good-faith money should have been returned. Certainly under his contract he had not forfeited it.

[5] In order to retain the money the burden was on appellant to show bad faith in rendering the opinion. As above seen, we do not think the grounds for the opinion unreasonable or trivial. The facts relied on to establish bad faith are that the attorney who rendered the opinion was the general attorney for appellee; that he officed in the same building with appellee; that he wrote the proposition and bid for appellant, signing the name of the company by himself; that before the opinion appellee obtained the bids by other parties on the bond issue, and that appellee's premium bid was at least one-third higher than the highest bid made by the other bidders; that after his bid, on account of the war, the market value of the bonds declined; that appellee sought to stop payment of the draft or checks deposited with appellant, and that he first asserted, after demanding the return of his check, that the bank would be liable to him for paying the check, but that he later had doubts as to its liability and sued the appellant for the money obtained on the check. From these circumstances we cannot conceive how an inference may be drawn, as the rational and logical deduction, that the opinion of the attorney was not honest, or was made in bad faith, or was a mere pretense. The jury perhaps could have bridged this hiatus on a guess or conjecture that it was the result of a collusion to avoid the contract by appellee, but they would have to go far afield in the realm of guesswork or conjecture to construct such a bridge. We believe the court properly instructed a verdict.

[6] It is insisted in the supplemental brief of appellant that the only stipulation for the return of the checks is in case the bids are rejected, and that there is no stipulation that the checks were to be returned to Slayton if Thurston rejected the transcript or bonds. As we interpret the proposition, the satisfaction of appellee's attorney with the bond issue was made a condition to appellee's obligation. Certainly, under this contract, his good-faith money was not forfeited if the condition precedent was not complied with. The appellant having failed to furnish such transcript as would satisfy the attorney of the condition upon which the proposition was made, of which the good-faith money was a part, the appellee was entitled to recover the money so deposited. Authorities supra; also Moore v. Price, 46 Tex. Civ. App. 304, 103 S. W. 234; Foster v. Hoff, 19 Tex. Civ. App. 405, 47 S. W. 399; Loring v. Oxford, 18 Tex. Civ. App. 415, 45 S. W. 395; Wright v. Bott, 163 S. W. 365 (14 and 15).

[7, 8] The thirteenth assignment is to that portion of the judgment with reference to the mayor, city manager, and commissioners, and who are ordered and commanded to proceed forthwith to provide, by required mode and manner of taxation, to pay the sum recovered. The cause of action is for money had and received and interest thereon. No mandamus was sought by the petition to compel the levy of taxes to pay the judgment recovered. That part of the judgment complained of is as follows:

"And it is further ordered that defendants, commissioners, to wit, Lon D. Marrs, mayor, W. E. Cazzell and John R. Trollinger, commissioners, and A. D. Armstrong, city manager, and their successors in office, are hereby ordered, required, and commanded to proceed forthwith to provide by regular mode and manner of taxation, and pay said sum of money to plaintiff in course of administration of the defendant's business."

The pleadings did not authorize any such extraordinary mandate on the part of the court. It is not shown that a tax levy is necessary or that the general fund is not sufficient to pay the judgment. These matters were not investigated in the trial court, and in fact not an issue. There is no allegation that if the judgment is obtained the city, or its officers, would refuse to do their duty. The judgment is mandatory, and enters the domain and powers of the city, without an allegation or proof that it would not perform its duty; but the judgment assumes that it will not do so. This was not a mandamus

proceeding, but the judgment rendered is as drastic as if the city officers had willfully refused to do their duty. Mandamus should not be granted unless the petition showed every fact necessary to entitle the relator to the relief sought. City of Sherman v. Langham, 92 Tex. 13, 40 S. W. 140, 42 S. W. 961, 39 L. R. A. 258; Munson v. Terrell, 101 Tex. 220, 105 S. W. 1114; Ewing v. Commissioners, 83 Tex. 663, 19 S. W. 280. The judgment rendered has no support in the pleadings and there was error in so rendering it. The judgment will be here reformed so as to omit that part of it set out herein, and as reformed will be affirmed, but the costs of the appeal will be taxed against the appellee.