## BRUNER v. COMMERCE LOAN CO.
### (No. 3285.)

Court of Civil Appeals of Texas. Amarillo. Oct. 9, 1929.

Rehearing Denied Nov. 6, 1929.

Hugh L. Umphres, of Amarillo, and W. H. Russell, of Hereford, for appellant.

Carl Gilliland, of Hereford, for appellee.

RANDOLPH, J. This suit was filed by the Commerce Loan Company against Roy K. Bruner to recover upon a note for the sum of $12,861.01, dated January 19, 1924, and due on demand, praying for interest and attorney's fees in addition.

The defendant filed his answer, consisting of a general demurrer and general denial, and a special answer admitting the original in-

debtedness on the particular note sued on and pleading payment thereof, as follows:

That on the last-mentioned date the defendant was indebted to the National Bank of Commerce of Amarillo, Tex., in the sum of about $15,000, and was indebted to the Commerce Loan Company in the sum of money evidenced by the note in suit, and was also indebted to the Godfrey Investment Company of Oklahoma City, Okl., in the sum of about $16,000, and was without the money with which to pay such indebtedness, though all of said indebtedness was secured by liens on certain lands in the county of Parmer, state of Texas, fully describing same; that on the date last aforesaid the indebtedness owing to the National Bank of Commerce of Amarillo, Tex., and that owing to the plaintiff was due and unpaid, and plaintiff was demanding payment of such indebtedness, and the defendant then and there offered to deed the said bank and the plaintiff said lands in satisfaction and settlement of all of the indebtedness he then owed said bank and the plaintiff; that the plaintiff and said bank, after considering defendant's said offer for some time, agreed to and did accept the offer and settled and canceled all of the indebtedness then owing to the National Bank of Commerce and the Commerce Loan Company.

The Commerce Loan Company and the National Bank of Commerce, after accepting the aforesaid offer of the defendant for the conveyance of all the right, title, and interest of the defendant in and to the land, caused a deed of conveyance thereto to be prepared and conveyed said property to the National Bank of Commerce, reciting the consideration to be $19,000 paid, which deed, although the consideration is not correctly stated, the defendant executed and caused to be executed by his wife and delivered the same to the National Bank of Commerce of Amarillo, Tex., in settlement of the indebtedness he then owed to said bank and also the indebtedness evidenced by the note in suit, and by reason thereof, all of the indebtedness evidenced by the note in suit, and all of the indebtedness defendant owed to the National Bank of Commerce, was paid and settled.

That Homer Powell, T. E. Durham, W. O'Brien, and C. B. Reeder were the officers and agents of said National Bank of Commerce of Amarillo, Tex., and the Commerce Loan Company, but that defendant is not advised as to whether they are each officers in both corporations, but defendant says that all of the transactions herein pleaded were had with the above named individuals, who acted for the two corporations, made the agreements aforesaid, and acted in all the matters herein alleged to have been had with defendant.

A jury was selected, impaneled, and sworn, and, after the court had heard the evidence, the court instructed the jury to return a verdict for the plaintiff, which was accordingly done and judgment rendered for the plaintiff upon said returned verdict.

The defendant, Bruner, states in his brief that the main question in this case is whether or not there was an agreement between the National Bank of Commerce, the Commerce Loan Company, and the appellant for the settlement of the note in suit and the indebtedness owing by appellant to the National Bank of Commerce in consideration of appellant's deed to the 1,493 acres of land which appellant executed and delivered to said bank.

As we view the record, this is purely a question of fact. Appellee introduced his note in evidence and rested. J. D. Hamlin testified as to the value of the land, that it was worth from $32 to $37 per acre at the time of this transaction, without the improvements, and, in the improved condition of the land, it was worth $36 to $40 per acre.

E. H. Powell, a witness for the appellant, testified: That he was formerly cashier for the National Bank of Commerce of Amarillo, Tex., and was acquainted with appellant and had business with him while cashier of said bank. " * * * That he had a conversation with Bruner in Judge Reeder's office, and appellant wanted to turn his land over to the bank for the notes the bank was holding and the note in suit. That he figured it up and found the land would lack three or four thousand dollars of being sufficient to pay the notes of the bank and the note in suit. That the Commerce Loan Company was in the rear of the National Bank of Commerce with doors opening between, and that Judge Reeder's office was over the bank. That the matter was brought up several times at meetings of the board of directors when, he believed, W. O'Brien was present, and the bank's board of directors turned down Bruner's proposition; that he had been present when Mr. Durham and Mr. Bruner were discussing the matter, and all he recalled was that Bruner was wanting to turn over the land to the bank for the paper. At the time in question T. E. Durham was president of said bank and W. O'Brien was chairman of the board of directors of said bank. The witness was not present when any agreement was made by appellant and Mr. Durham, but Mr. Durham did tell witness to have Judge Reeder draw up the papers, and he did. The witness did not recall what Mr. Durham said to him, nor what witness said to Judge Reeder about the papers. Judge Reeder knew all about it. Witness thought Mr. Durham was present at the meeting at which the subject of Mr. Bruner turning over his land for these notes was discussed: The National Bank of Commerce of Amarillo, Texas, was the bank the witness referred to, not the Commerce Loan Company."

The appellant Bruner testified:

"I reside at Tucumcari, New Mexico, having resided there since about February of last

year. Prior to that time I lived at Hereford, Texas, and I had lived in Hereford since about the year 1917. I am engaged in the cattle business and I owned the land described in defendant's answer. It was down near Parmerton. I was indebted to the National Bank of Commerce, the Commerce Loan Company, and the Godfrey Investment Company about and before the 23rd day of February, 1925, and this indebtedness was secured by a lien on the lands that I have described in my pleadings. About that time I had business with Mr. W. O'Brien, President of the Commerce Loan Company, concerning my business with the Commerce Loan Company. At one time I discussed it with Mr. O'Brien and Mr. Durham. This conversation was in Mr. O'Brien's office in the National Bank of Commerce Building in Amarillo, Texas, which was on the main floor of the bank building and in a room adjoining the bank. I was there talking over my business, having a loan due, and trying to arrange it in some way. Mr. Durham was present and my conversation was with Mr. O'Brien and Mr. Durham relative to my indebtedness to the National Bank of Commerce and the Commerce Loan Company. I was trying to get them to take the land for my indebtedness, and they refused to do so. I did have a subsequent conversation with Mr. Powell and Mr. Durham in the bank. I offered them the land to pay my indebtedness to the Commerce Loan Company and the National Bank of Commerce. Mr. Durham went up to Judge Reeder's office to talk it over with him and I went up with Mr. Powell to Judge Reeder's office. Our discussion there was practically the same thing. I told them that I wanted to deed the land for the notes that I owed the two concerns—the bank and the loan company. I don't think Judge Reeder said much about it. He discussed it but he did not express himself. He never said he would or would not. I just listened to that part of the conversation. That was the occasion when Mr. Powell made some figures when I was present and the indebtedness was carried into the figures. I remained in Judge Reeder's office about thirty minutes and did not reach an agreement at that time. Mr. Powell figured it out and said he thought the land would lack about two thousand dollars of paying my indebtedness and we left it that way. Afterwards Mr. Durham came to see me and said they had decided to accept my proposition but I never talked to Mr. O'Brien or to Mr. Powell, or to Judge Reeder about it. I told Mr. Durham to have the deed made. He said they had decided to trade with me. I told him to prepare the deed the way they wanted it and we would sign it. The deed was afterwards prepared, signed and delivered to Mr. Durham. This is the deed, which is introduced in evidence by the defendant, and reads as follows:" (This being the deed in controversy.)

"I did not get the $19,000.00 called for in the deed nor was I expecting it; and I did not get anything else at all at the time I delivered the deed; but I finally got a part of my notes. I asked for my notes at the time. Mr. Durham was the man I talked to, and I asked for my notes. He said he could not give them to me, that they did not have them where he could get them. About a month later I made inquiry of Mr. Durham about the notes but I did not get them then. I kind of forgot about them, not considering them of much value, and I don't think I ever asked for them again. I had nothing to with the preparation of the deed but only the executing and signing of it. The $19,000.00 consideration expressed in the deed is not what I was supposed to get. I thought I was getting my notes, $31,000.00 worth, and the return of the notes to me was the entire consideration for the deed to the property; that is, the notes I owed the National Bank of Commerce and the one I owed the Commerce Loan Company, which is the note in suit; and it was one of the notes I expected returned to me, and was one that was mentioned in my proposition that I testified about making to Mr. Durham, Mr. O'Brien and Judge Reeder. The only time I ever discussed the matter with Mr. O'Brien was before the trade was made with Mr. Durham, when I had some business with the Commerce Loan Company. Mr. O'Brien transacted the business for the Commerce Loan Company. I never did hear any more about the Commerce Loan Company note after delivering the deed to Mr. Durham until I received a letter from Mr. C. L. O'Brien in the summer of 1927, when he wanted me to do something with it. That was the first time any demand was ever made on me for payment; and I got a letter from Mr. W. O'Brien after that. I saw Mr. W. O'Brien a good many times and he never mentioned holding any note against me and I never talked with him until I got a letter from his son, which was, as I said, in the summer of 1927, and was the first I had heard of the matter since delivering my deed to Mr. Durham. I saw Mr. O'Brien in his office every once in a while but discussed no business with him. I did not have any business with him. He did not bring this matter up at all. The next I heard about the matter was a wire and a letter from Mr. W. O'Brien telling me he was going to bring suit if the note was not paid or renewed. He offered to let me renew it. I did not answed him at all. The best I can recall the conversation when Mr. Durham and Mr. O'Brien were present in the Commerce Loan Company office discussing my proposal about deeding the land for the notes, it was that Mr. Durham said he thought he could use the notes better than the land; and I don't think Mr. O'Brien said anything. I did not hear Mr. Durham ask Mr. O'Brien's opinion, and I do not recall Mr. O'Brien volunteering his opinion. My exact proposition was to give

them the land for my indebtedness, all of it; it was all I had; it was all I could do.".

Cross-examination:

"The National Bank of Commerce is at Amarillo, Texas, and Mr. Durham was its president and Mr. Reeder was the attorney of that bank. As far as I know, Mr. Durham and Mr. Reeder had no connection with the Commerce Loan Company. Mr. W. O'Brien was the man running that. When I spoke about the O'Brien notes in giving my testimony, I meant the note I owed the Commerce Loan Company, and the other notes I referred to were the ones I owed to the National Bank of Commerce. I don't remember anything that Mr. O'Brien said in the conversation I had with Mr. Durham when Mr. O'Brien was present and I made the proposition to deed the land in settlement of the indebtedness. I remember what Mr. Durham said—that they could use the notes better than the land—but I don't know that Mr. O'Brien expressed himself at all in the matter. As a matter of fact, I think Mr. O'Brien's office was downstairs at the time I speak of. I went upstairs when I went to Judge Reeder's office. I never talked to Mr. O'Brien when Mr. Powell was present. The only time that I remember talking with Mr. O'Brien was when I sat down with Tom Durham in the back of the bank; and Mr. O'Brien never did tell me what he would agree to do. Mr. Durham said, 'we have decided to take up your proposition.' That was just about all he said."

Neither Durham, the president of the National Bank of Commerce, nor W. O'Brien, president of the Commerce Loan Company, testified in the case.

The appellant insists that the evidence raised the issue "as to whether the National Bank of Commerce of Amarillo, Texas, was acting for both itself and the Commerce Loan Company in accepting appellant's deed as payment of the indebtedness of both of those corporations."

It is true that appellant was indebted to both corporations; that the appellant went into conference with Durham, the president of the bank, and W. O'Brien, the president of the appellee corporation, who was also a director of the National Bank of Commerce and chairman of the board of directors of said bank; that in said conference above noted, appellant offered to deed his land in settlement of the indebtedness owing to both corporations; that Durham, the president of the bank, afterwards came to see appellant and said that "they" had decided to accept his proposition; that appellant had made only the one proposition, i. e., to deed the land in settlement of the debts of both corporations; that the deed executed recited a consideration largely in excess of the amount due to the National Bank of Commerce; that the undisputed evidence shows that the reasonable value of the land was in excess of the amount of the liens of all three of the lienholders, to wit, the lien of the Commerce Loan Company and of the National Bank of Commerce, which were alleged to have been canceled, and of the Godfrey Investment Company, to which the land was subject.

To the contrary, the evidence clearly shows that only one conference was held in which appellant, Durham, and O'Brien participated, and in which appellant submitted his only proposition to deed the land in payment of the two debts; that O'Brien had nothing to say; and that Durham definitely rejected the proposition. As this was a proposition made to two parties and one of them then and there rejected it, saying "we can use the notes to better advantage than the land," it was not necessary for O'Brien to accept or reject it—it was already rejected.

The fact that Durham afterwards came to appellant and said "they" would accept his (appellant's) proposition does not establish Durham's agency to represent the Commerce Loan Company. Agency cannot be established by evidence of the declaration of one who represents himself as the agent. Coleman & Davidson v. Colgate, 69 Tex. 88, 6 S. W. 553, and in this case, the party being charged with the agency is not shown to have made any such declaration of agency.

There may be circumstances of a suspicious nature which lead the appellant to believe that the bank was acting through Durham, its agent, as the agent of the appellee, but to our minds they point to a different conclusion. City of Amarillo v. W. L. Slayton & Co. (Tex. Civ. App.) 208 S. W. 967, 971.

Without having any purpose to decide any matter in controversy between the appellant and the bank in any litigation that might arise or has arisen between those parties, we affirm the judgment of the trial court.