R. E. SMITH et al., Appellants,

v.

W. W. McMILLAN et al., Appellees.

No. 13815.

Court of Civil Appeals of Texas.

Houston.

Nov. 30, 1961.

Rehearing Denied Jan. 18, 1962.

Hofheinz, Sears, James & Burns, Houston, Will Sears, W. Ervin James, Houston, of counsel, for appellants.

Bell & Singleton, John V. Singleton, Jr., Otto A. Yelton, Jr., Houston, for appellees.

WERLEIN, Justice.

This suit was brought by R. E. Smith and Ray Hofheinz, appellants, against appellees for specific performance of a contract of sale of land in Brazoria County, Texas. Appellees filed a cross-action against appellants, praying that the contract be declared null and void. Trial was without a jury. After appellants rested, appellees moved for judgment on the ground that the undisputed evidence showed as a matter of law that appellants had failed to make an adequate tender of performance as a condition precedent to the relief sought by them.

The trial court rendered judgment that appellants take nothing against appellees, and declared the contract of sale null and void.

In order to obtain a clear understanding of the issues involved, the agreement of the parties dated August 24, 1959 must be carefully examined. In such agreement appellees contracted to sell and appellants to buy all of the property owned or claimed by appellees in Section 76, H. T. & B. R. R. Co. Survey, Abstract No. 562; Section 77, H. T. & B. R. R. Co. Survey, Abstract No. 302; Section 1, A. C. H. & B. Survey, Abstract No. 403; Section 2, A. C. H. & B. Survey, Abstract 566.

The contract provides that notwithstanding the enumeration by section and abstract numbers set out above, it is the intention of the sellers to sell to the purchasers all of the tracts of land owned or claimed by them in the over-all parcel of lands centering up-

on said Section 77, whether contained within the foregoing sections or not; that sellers will convey the surface and mineral estate in and to all of such lands by general warranty deed subject to a trust lien held by the Bank of the Southwest National Association, excepting, however, from the mineral estate such outstanding royalty and mineral interests as are shown of record, and excepting from the conveyance and warranty the rights, if any, existing under a conveyance for canal purposes.

The contract provides for a consideration of $525,000.00, and that upon final closing of the transaction, the purchasers will assume said trust lien and after deducting the pro rata portion of taxes for the year 1959 and other closing costs "hereinafter set forth chargeable to sellers," purchasers will pay to sellers in cash the difference between the total amount of assumed principal and accrued interest, and the over-all price of $525,000.00. The agreement also provides for an adjustment in price at the rate of $443.42 per acre should there be more or less than 1184 surface acres in the over-all parcel of lands.

Paragraphs 6 and 7 of the agreement are as follows:

"6. Sellers agree to furnish the Purchasers an abstract of title covering the above described lands from the sovereignty of the soil to a current date, which abstract shall be furnished without delay and within a reasonable time from and after the date of this agreement, and which abstract of title, upon examination, will show a good and merchantable title in the Sellers as represented in Paragraph 2 hereof, to the satisfaction of Purchasers' attorneys. Within a reasonable time after delivery of such abstracts, Purchasers will either accept the title as good and merchantable as herein set out or will furnish to the Sellers the written title opinion of Purchasers' attorneys, stating objections to the title, whereupon Sellers shall have a reasonable time to clear the objections, at Sellers' sole cost and expense, and show a good and merchantable title as aforesaid. In the event of the failure of the Sellers to furnish a good and merchantable title satisfactory to Purchasers' attorneys, the Escrow Agent shall, upon Purchasers' demand, return to Purchasers the $25,000.00 earnest money whereupon this contract shall be cancelled; or Purchasers may enforce specific performance of this contract; or, in the event of Sellers' failure to meet and cure objections to the title, Purchasers may demand and take title subject to such objections and shall be thereupon entitled to charge the Sellers and recover from them the reasonable cost and expense of curing and perfecting the title so acquired.

"7. Not later than thirty (30) days from and after the delivery of all curative instruments necessary to show a good and merchantable title to the satisfaction of Purchasers' attorneys, or thirty (30) days after acceptance by Purchasers' attorneys of the title as shown in the abstract as good and merchantable, the Sellers agree to deliver a good and sufficient General Warranty Deed (subject to the exceptions set out above) in form satisfactory to the Purchasers properly conveying the lands herein contracted to the Purchasers; and upon the delivery of such deed, Purchasers agree to pay the consideration by assumption and cash payment as set out above. At the time of such closing, the Sellers will be charged with their prorated portion of taxes for the year 1959, with the cost of Federal revenue stamps, and with abstract and title costs (including cost of curing title.) * * *"

The survey of the property established that there was a total gross acreage covered by the agreement of 1202.825 acres which included 18.408 acres in County Roads, 18.76 acres in Houston Lighting & Power Company easement, 4.28 acres in Dow Chemical

Company easement, .20 acre in Trunkline Gas Company easement and 17.08 acres in a rice canal easement. In addition the survey showed a probable vacancy of 36.293 acres, and that approximately five acres of the Houston Lighting & Power Company easement was included in and was a part of such vacancy.

The title opinion of appellants' attorney, delivered to appellees on November 23, 1959, listed 25 objections to the title. Thereafter, both appellants and appellees undertook to clear up and satisfy some of such objections. On January 6, 1960, appellants' attorney wrote a supplemental title opinion, which the court erred in excluding, showing the objections that had been satisfied and the defects in the title which had not been cured.

On February 29, 1960, the sale had not been consummated because there were several defects in the title which appellees had failed to cure. On that date appellants elected to take the title subject to unsatisfied objections, in accordance with Paragraph 6 of the agreement. In their letter of that date they advised appellees that they had sent to the escrow agent, Houston Bank and Trust Company, for execution by appellees, a general warranty deed covering 1184.417 acres, being the entire acreage surveyed less 18.408 acres excluded because in county road easements, and they tendered appellees the purchase price for such acreage in the sum of $525,184.90, less the Bank of the Southwest lien, the cost of the survey, the County Clerk's filing fees, costs of certified copies, Federal documentary stamps, and $27,898.12 which they stated was the reasonable cost and expense of curing and clearing title.

The $27,898.12 deducted from the amount tendered included $16,093.04 for the 36.293 acres in the vacancy at the rate of $443.42 per acre. There was also deducted $1500.00 as reasonable and necessary charges, including attorney's fees, court costs and miscellaneous legal costs to cure certain objections to the title. $10,305.08 was deducted

to cover the 23.24 acres within the Dow Chemical Company, Trunkline Gas Company and Houston Lighting & Power Company easements.

Thereafter, on March 18, 1960 appellees advised appellants that the tender made by them was insufficient, stating that no value was allowed or placed upon the alleged vacancy included in the deed; the $1500.00 charge for the cost of curing title was utterly ridiculous; no value was allowed or placed upon the acreage covered by the easements included in the deed, and the tender was not in accordance with the terms of the contract. Appellees further advised appellants that since the tender in said letter of demand dated February 29, 1960 was insufficient they had decided, without waiving any of their rights, to treat such insufficient tender as a manifestation on the part of appellants to rescind the contract, and that if they were mistaken in so construing said letter, they themselves rescinded the contract by reason of appellants' insufficient tender.

The parties hereto do not contend that there is any ambiguity in the contract in question. It is appellants' contention that under the contract they had the right in making their tender to deduct from the amount tendered the value of the acreage in the vacancy and in said easements at the full rate of $443.42 per acre, although they included such acreage in the general warranty deed which they demanded that appellees execute. They also contend that they had the right to deduct the $1500.00 as reasonable and necessary charges to take care of anticipated curative work.

Appellees, on the other hand, take the position that they were not required to execute a general warranty deed to any acreage for which they were not paid the contract price of $443.42 per acre. They also contend that appellants were deducting twice for five acres included in both the Houston Lighting & Power Company easement and in the vacancy. They further contend that appellants had no right to

deduct from the amount tendered the $1500.-00 representing the reasonable and necessary costs of curing defects in the title since no costs had been incurred. It is their contention that they should be paid for the number of acres included in the general warranty deed, and if their title fails to any of such acreage appellants may recover from them upon their warranty.

Paragraph 6 of the agreement gives appellants, upon appellees' failure to furnish a good and merchantable title satisfactory to the purchasers' attorneys, the right to demand the $25,000.00 earnest money and treat the contract as cancelled, or enforce specific performance of the contract, or in the event of sellers' failure to meet and cure objections to the title, to demand and take the title subject to such objections and charge the sellers and recover from them the reasonable cost and expense of curing and perfecting the title so acquired. Appellants chose to demand and take title subject to title objections, and to charge the sellers and recover from them the reasonable cost and expense of curing and perfecting the title so acquired. However, they sought to deduct $1500.00 which they estimated would be the reasonable cost and expense of curing the title before they had expended such amount. The contract does not give them the right to do so. The evidence shows that a suit may or may not become necessary to cure the title. Until the expense has been incurred, no one can determine the amount or reasonableness thereof. The contract does not provide that appellants may deduct the reasonable cost and expense of curing and perfecting the title, but that they may recover such costs.

Appellants contend, however, that Paragraph 7 of the agreement gives them the right to deduct such reasonable cost and expense at the time of closing. The sentence they rely upon is as follows: "At the time of such closing, the Sellers will be charged with their prorated portion of taxes for the year 1959, with the cost of Federal revenue stamps, and with abstract and title costs (including cost of curing title)."

It will be noted that Paragraph 7 has to do with the situation where not later than thirty days from and after the delivery of all curative instruments necessary to show a good and merchantable title to the satisfaction of purchasers' attorneys, or thirty days after acceptance by purchasers' attorneys of the title as shown in the abstract as good and merchantable, the sellers agree to deliver a good and sufficient warranty deed conveying the land. Curative instruments were not delivered showing good and merchantable title to the satisfaction of purchasers' attorneys, and title was never accepted as good and merchantable. The provision "(including the cost of curing title)" has reference to costs that have been incurred at the time the purchasers accept the title as good and merchantable. The provision in Paragraph 3 of the agreement with respect to closing costs may be construed as referring to costs mentioned in Paragraph 7, but such provision clearly includes only costs incurred at the time purchasers take title to the property. It does not authorize the purchasers to deduct from the purchase money anticipated costs that may or may not be incurred in curing title defects.

Appellants' counsel in his title opinion, which was admitted subject to being later stricken, and which was later stricken from the record, showed a probable vacancy of some 36 acres in the over-all parcel of lands centering upon Section 77. The court refused to permit counsel to testify as to his positive opinion from what the surveyor found on the ground that a vacancy actually existed. In striking the title opinion and in excluding such testimony the court erred. Under the terms of the agreement it was necessary for appellees to show a good and merchantable title to the property to the satisfaction of appellants' attorney. The law is well settled that such provision must be given effect and that a purchaser will not be required to

take title which his attorney finds defective, so long as the attorney's failure to approve the title is not arbitrary or in bad faith. Dixie Oil Co. v. McBurnett, Tex. Com.App.1928, 6 S.W.2d 83; City of Amarillo v. W. L. Slayton & Co., Tex.Civ. App., 208 S.W. 967; Campbell v. Hart, Tex.Civ.App., 256 S.W.2d 255, writ ref., n. r. e., 1953.

The agreement clearly states that the over-all consideration of $525,000.00 is subject to the agreement and understanding of the parties that 1184 surface acres are contained within the over-all parcel of lands to be conveyed, and provides:

"Should it be determined upon examination of abstracts of title that the Sellers do not own 1,184 surface acres, or should it be determined that the overall parcel of lands actually contains less than 1,184 or more than 1,184 acres by survey upon the ground, conducted by a Licensed State Land Surveyor selected by the Purchasers, at Sellers' cost, the final cash consideration to be paid shall be adjusted at the rate of $443.42 per acre, such sum to be deducted for acreage short of 1,184 acres, or added for acres in excess of 1,184 acres."

■ The over-all parcel of lands in round figures contains 1184 acres (excluding the roads), but including the alleged vacancy. Appellants contend that appellees do not own the 36 acres in the vacancy, but merely have a claim thereto and a prior right to obtain a patent from the State to such acreage. We are not unmindful of the rule that ownership of the land by vendor at the time suit is brought for specific performance of a contract of sale is ordinarily essential to the maintenance of such suit. Clifton v. Charles, 1909, 53 Tex.Civ.App. 448. 116 S.W. 120, error ref.; Blair v. Lowrey, Tex.Civ.App. 1914, 164 S.W. 14; Redwine v. Hudman, 1911, 104. Tex. 21, 133 S.W. 426. The present case does not fall within such rule since the sellers in this case agree

to sell and the purchasers to buy not only what the sellers own but what they claim in the over-all parcel of lands. This provision gives appellants the right to insist that the acreage in the vacancy be conveyed to them. Since, however, their attorney in his opinion states that appellees' title to the vacancy is not good and merchantable, appellants cannot be required to accept a conveyance to such acreage.

The opinion of appellants' attorney as to the title must be taken as controlling in determining whether appellants may be required to accept title to the vacancy. Dixie Oil Co. v. McBurnett; City of Amarillo v. W. L. Slayton & Co.; Campbell v. Hart; supra. Such opinion, however, is no substitute for an adjudication of legal title or ownership for all purposes, even though the opinion is given in the utmost good faith. It is not unusual for attorneys to disagree as to what does or does not constitute a good and merchantable title to land.

■ Appellants assert that since their attorney in good faith has pronounced the title to the vacancy bad they may deduct $443.42 for each acre in the vacancy and at the same time have such acreage included in the general warranty deed since appellees claim such vacancy. We do not agree. Appellants have a perfect right to refuse to accept a deed to such acreage and deduct from the over-all consideration $443.42 per acre therefor, but they cannot take the title to the land by general warranty deed and at the same time deduct for the acreage in the vacancy. If they could do this, it might well be that they would get the acreage in the vacancy for nothing. They may never be evicted from such acreage by the State and they may be able to settle with the State for much less than the per-acre valuation.

■ Appellees' claim to the vacancy and their prior right to secure a patent thereto, as well as the privity of estate with respect to claims of limitation and

adverse possession which would result from the conveyance, are not without value. We do not think the parties to the contract ever contemplated that a claim of such nature should be included in the deed without payment therefor. The contract of sale which was drawn up by appellants does not provide that any part of the consideration can be deducted for acreage which is included in the deed. If such was appellants' intention, they should have so provided in no uncertain language. As stated by Chief Justice Gaines in Amory Mfg. Co. v. Gulf, C. & S. F. Ry. Co., 89 Tex. 419, 37 S.W. 856 (1896):

"The rule is elementary that if a written contract, when viewed as a whole, and in the light of the attendant circumstances, reasonably admits of two constructions, that one is to be adopted which is least favorable to the party whose language it is."

Furthermore, the contract provides that " * * * it is the intention of the Sellers to sell to the Purchasers all of the tracts of land owned or claimed by them. * * * " We think the word "sell" connotes a sale and not a gift. True, Paragraph 4 of the contract provides that should it be determined that the sellers do not own 1184 acres the cash consideration shall be adjusted at the rate of $443.42 per acre, such sum to be deducted for acreage short of 1184 acres. Such provision cannot reasonably be construed to mean that there can be a deduction for land claimed by sellers when such land is included in the deed at the instance of the purchasers. Appellants elected to take the title subject to the objections of appellants' attorney. This they must do. If the title fails or if it is later adjudicated that appellees do not own the acreage in the vacancy, or in the event it is necessary to cure certain title defects, appellants "shall be thereupon entitled to charge the Sellers and recover from them the reasonable cost and expense of curing and perfecting the title so acquired."

The acreage in the easements was also included in the general warranty deed but without allowing anything therefor, except the per-acre price for the acreage in the canal easement. The easements constitute encumbrances upon the land, but do not result in a deficiency in the acreage owned by appellees. Bonzer v. Garrett, Tex.Civ.App., 162 S.W. 934, error refused, 1914. It was proper to include in the deed the acreage in the easements, but no deduction from the purchase price should have been made by appellants for such acreage. It is our view that appellants are required to pay for such acreage and then later recover from appellees because of the encumbrances such damages or curative costs as may be reasonable and equitable.

Appellants contend that they were at no time in default and that, therefore, appellees had no right to rescind the contract, and that the court erred in declaring the contract to be of no effect. There is no provision in the contract expressly giving appellees the right to rescind it other than that contained in paragraph 8 of the agreement, which provides:

"Should the Purchasers fail to consummate this contract as specified herein for any reason except the failure of the Sellers to deliver a good and merchantable title satisfactory to the Purchasers' attorneys as herein provided, the Sellers shall have the election to cancel and rescind this contract, retaining the $25,000.00 earnest money as liquidated damages for Purchasers' breach thereof, or Sellers may enforce specific performance of this contract as against the Purchasers."

It will be noted that appellees did not undertake to retain the $25,000.00 earnest money. It is manifest that they do not contend that the purchasers failed to consummate the contract for any reason except the failure of sellers to deliver a good and merchantable title satisfactory to the

purchasers' attorneys. Appellees assert, however, that they had the right to rescind the contract because of the delay in closing the transaction and also because of the inadequate tender made by appellants.

Appellees were at least as much responsible as appellants for the delay in closing the transaction. They were in no position to rescind because of delay. Nor were they in a position to rescind because of the inadequacy of appellants' tender, since they were clearly in default by refusing to perform their part of the contract with respect to curing certain title defects. In submitting the deed and taking the deductions in question, as set out in their letter of February 29, 1960, appellants were merely setting out their interpretation and understanding of the contract and their rights thereunder. Such letter cannot be construed as a rescission of the contract by appellants, nor do we think it can be construed as a final, unequivocal and absolute refusal on their part to perform the contract in its entirety. It provides for certain adjustments or prorations to be made and changes in the amounts which appellants would pay. It is in the nature of a demand that appellees, who were in default and who continued to be in default, perform their part of the agreement in connection with curing title defects and execute a deed of conveyance as they were required to do when appellants elected to take the title subject to objections. Such letter did not give appellees the right to rescind the agreement.

In reply to the letter of February 29, 1960, appellees wrote their letter of March 2, 1960, which the court erred in excluding, clearly indicating that they thought the matter of settling the transaction could be satisfactorily disposed of by agreement of the parties and the transaction closed within a day or two. This letter should have been admitted in evidence as it has an important bearing upon waiver on the part of appellees of any default on the part of

appellants, in the event their letter of February 29, 1960 can be construed as placing them in default. Appellees' letter of March 18, 1960, addressed to appellants, in effect states that if the appellants' letter of February 29 was not intended as a rescission of the contract, then appellees elected to rescind the same "by reason of your breach thereof and insufficient tender of consideration thereunder." In such letter appellees did not state what payment they would demand for execution of the deed, although they did complain that no amount had been allowed for the vacancy or the acreage in the easements, and asserted that the $1500.00 charged by purchasers was ridiculous. It was their responsibility as sellers to furnish a proper deed conveying the property, if dissatisfied with the deed presented by appellants, or at least to give appellants notice of an intention to rescind prior to rescission in view of the letter of March 2, 1960. Instead of doing so, they undertook to rescind the contract of sale. By such action they clearly indicated their intention not to be bound by the contract, thereby relieving appellants from making any further tender prior to suit.

Since appellees were in default, they neither had the right to rescind the contract nor to take advantage of appellants' alleged insufficient tender. In Burford v. Pounders, 1947, 145 Tex. 460, 199 S.W.2d 141, 143, our Supreme Court quoted with approval the following statement in 49 Amer.Jur., under the title "Specific Performance", § 144, p. 167:

> " 'Whatever difference of opinion there may be as to the necessity of tender of performance before suit when the defendant *is not in default,* it is clear that a tender is unnecessary *if the defendant repudiates the contract before suit, or it appears that he would have refused the tender if it had been made.* \* \* \* If the *defendant puts himself in an attitude of default,* resists the performance, *and insists that he is not bound by the con-*

*tract,* tender to him is unnecessary. * * * Consequently, all that is required in such case is that the plaintiff place himself in favor with the court, *and this may be done by a proper offer in the pleadings.'* (Italics ours)."

See also Young v. Fitts, 1942, 138 Tex. 138, 157 S.W.2d 873; Haney v. Clark, 65 Tex. 93, 1885; 91 C.J.S. Vendor and Purchaser § 134, p. 1071.

Under the circumstances of this case appellants had the right to file and prosecute their suit for specific performance. In their petition they alleged that they had offered to do and perform and had at all times since February 29, 1960, been ready, able and willing to do and perform each and every obligation required of them by the contract of sale, and had tendered performance under said agreement to appellees, and that they were ready, able and willing to pay to appellees the full and complete amount of the purchase money in full accordance with the sale agreement and to do complete equity as between the parties. In connection with such tender they deposited in court the sum of $336,-038.10 which they considered the amount owing, but they pleaded that " * * * in the event the Court for any other reason determines that any further sum is due to Defendants under the sale agreement, Plaintiffs stand ready, willing and able and here and now offer to deposit such further sum in court or pay the same to the Defendants, as the Court may order." Clearly the tender was not limited to the amount deposited.

Generally specific performance, when permissible under a contract, will be granted when it is apparent that it will subserve the ends of justice and not result in injustice or hardship to either of the parties. Fisher v. Wilson, Tex.Civ. App., 185 S.W.2d 186, 190, aff'd 1945, 144 Tex. 53, 188 S.W.2d 150. Since the action for specific performance is one in equity, the court may refuse relief if the evidence shows that the granting of relief would work hardship. The plaintiff in seeking equity must offer to do equity. The trial court may condition relief in such manner as to require it.

We are of the opinion that the court erred in excluding the letters between the parties relating to the tender and the negotiations between the parties with respect to curing title defects, and also in striking out the title opinion of appellants' attorney. We shall not discuss such errors at length because they will not likely arise upon another trial of the case.

It is apparent that the trial court tried the case on the theory that it was necessary as a condition precedent to relief in the nature of specific performance, for appellants to have tendered the exact amount that might be due under the contract as a condition to maintaining the suit, regardless of the title objections made by appellants' attorney and despite appellees' failure and refusal to cure a number of such objections. In so doing the court excluded much of appellants' evidence that should have been admitted, with the result that the case was not fully developed and must be retried.

Reversed and remanded.

COLEMAN, J., concurring, BELL, C. J., dissenting.

COLEMAN, Justice (concurring).

Except as herein pointed out, I concur in the opinion written by Associate Justice WERLEIN and in his decision that the case should be reversed and remanded for a new trial.

Appellants seek specific performance of the contract under the provision giving them the right to demand a deed subject to defects in title. Assuming that by making this election appellants waived the provisions of the contract the violation of which had placed appellees in default, still

appellants had not refused to perform their obligations under the contract. While the tender which they made at the time of election was insufficient, it merely represented their construction of the contract and constituted a demand for performance rather than a refusal to perform. While by the general rule a sufficient tender is necessary before bringing suit for specific performance, such a tender is excused where the other party to the contract without default on the part of the plaintiff has refused to perform. 81 C.J.S. Specific Performance § 97, p. 617. Here appellees have refused to perform by attempting to rescind the contract. The real question to be determined is whether or not appellees had a right to rescind. If they had no such right, the tender which appellants made in their pleadings is sufficient. Without undertaking to determine whether or not a right to rescind exists in this case, it is sufficient to state that the contract does not specify any ground for rescission on the part of sellers, other than failure on the part of the purchasers to consummate the contract. The record does not show as a matter of law such a failure.

"Under the common law and statutes which prescribe the right, one party to a contract may, subject to certain limitations hereinafter stated, terminate or rescind it, because of the substantial nonperformance or breach of the other. The right to rescind, is an extreme one and does not arise from every breach, and the general rule is that rescission will not be permitted for a slight or casual breach of the contract, but only for such breaches as are so substantial and fundamental as to defeat the object of the parties in making the agreement. So a mere dispute as to the manner of performance resulting from a misunderstanding which is not persisted in, or the assertion of an unfounded or illegal claim pending performance is not sufficient to justify a rescission,

* * *." (17 C.J.S. Contracts § 422, pp. 906, 907.)

Whether or not the right to rescind exists in this case is a question of fact to be determined by the trial court.

I do not agree with that portion of the opinion of Justice WERLEIN with which Chief Justice BELL agrees, reading: "The contract of sale which was drawn up by appellants does not provide that any part of the consideration can be deducted for acreage which is included in the deed." Since this is a substantial question which will arise on a new trial, I consider it necessary to discuss the matter at length. This is purely a matter of the construction to be given those provisions of the contract reading as follows:

"1. Subject to the following terms, conditions and stipulations, Sellers have agreed to sell and Purchasers have agreed to buy all of the following: * * *

"Notwithstanding the enumeration by section and abstract numbers set out above, it is the intention of the Sellers to sell to the Purchasers *all* of the tracts of land *owned* or *claimed* by them *in* the overall parcel of land * * * (emphasis supplied)

"2. The Sellers will convey the surface to *all* of such lands by *general warranty deed* * * * (emphasis supplied).

"3. In consideration for such sale and conveyance, Purchasers have agreed to pay to the Sellers the sum of $525,000.00, subject to the terms and stipulations contained in this agreement, * * *

"4. The overall consideration of $525,000.00 is subject to the agreement and understanding of the parties that 1,184 surface acres are contained *within* the overall parcel of lands to be conveyed under this agreement. *Should it be determined upon exam-*

*ination of abstracts of title that the Sellers do not own 1,184 surface acres, or* should it be determined that the overall parcel of lands actually contains less than 1,184 acres or more than 1,184 acres by survey upon the ground \* \* \* the final cash consideration to be paid shall be adjusted at the rate of $443.42 per acre \* \*" (emphasis supplied).

The contract plainly provides that all of the land *owned* or *claimed* by sellers in the area described in the contract should be conveyed by them to the purchasers by general warranty deed for a consideration of $525,000.00. Obviously the words "owned" and "claimed" are not synonymous. In this context the word "claimed" was used in contrast to the word "owned" and refers to lands within the description, title to which was not demonstrated by the abstract of title and curative material. The land which purchasers contend to be a vacancy lies within the general description and is claimed by sellers. Purchasers have a right to demand that it be conveyed to them.

The purchase price is a lump sum, but sellers have agreed that should it be determined upon examination of the abstracts of title that sellers do not own 1,184 acres, a deduction from the gross price may be made. Some effect must be given to this clause different from that given to the following clause relating to acreage shown by survey on the ground. It seems clear that this provision means that a reduction of the purchase price should be made if the record title to a portion of the land is not good in the opinion of the examining attorney.

The sale was in gross and not per acre or by tracts. The contract recites that the price was arrived at by valuing the land and the improvements separately. The amount to be deducted is the pro rata price per acre figured on the total purchase price without regard to the amount agreed as the value of the improvements. There is no prayer for reformation of the contract or plea of fraud, illegality or overreaching. The parties reached an agreement and do not now contend that it is ambiguous. The purchasers should be permitted to deduct from the purchase price the agreed amount per acre for the acreage in the claimed vacancy in the absence of proof of bad faith on the part of the examining attorney.

In the absence of proper pleadings and evidence warranting a reformation of the contract, this Court should not grant such relief by a strained construction of the provisions of the contract.

BELL, Chief Justice (dissenting).

Being unable to agree with my Associates that the trial court's judgment should be reversed, I respectfully enter my dissent.

I am in accord with Associate Justice WERLEIN in the construction he has given the contract of purchase, that is, that since appellants elected to take title subject to the objections to title, they must pay for all acreage to be conveyed by the general warranty deed. The part of the contract giving appellants the right to deduct $443.42 per acre would apply only if appellants elected not to include certain acreage in the deed to which appellees, in appellants' attorney's opinion, had no marketable title.

The only portion of Associate Justice WERLEIN's opinion with which I disagree is where he holds that since appellees were in default in not being able to give a good and merchantable title they could not complain of the failure of appellants to make a sufficient tender. I do not disagree with the rule that holds default by the seller will excuse tender by the purchaser. I just think under the facts of this case the rule is inapplicable. Appellees were in default in failing and refusing to make title good. Appellants could have rescinded the contract. They chose, however, not

to resort to such provision in the contract. They chose rather to exercise their right to take title subject to the objections. When they did this they waived appellees' default. They were then obligated to make tender of the full purchase price less the amount of the lien in favor of Bank of the Southwest, surveyor's fees, documentary stamps and any reasonable expense they had incurred in an effort to cure title. They were relegated to a recovery, after conveyance, of the reasonable cost and expense of curing title, and, if they were unable to cure title, they could recover on their warranties.

I am also of the view that the record supports without question that appellees were ready and willing to execute a general warranty deed to all the land if appellants would pay them for all the land. It was unnecessary for appellees to prepare a different deed. They would execute the one presented by appellants upon proper tender.

I would affirm the judgment of the trial court.