## CITY OF SHERMAN V. R. LANGHAM ET AL.

### No. 522. Decided November 22, 1897.

**1. Municipal Taxation—Mandamus—Debts—Current Expenses.**

When a city council, in good faith, fixes the current expenses of the city at such a sum that it becomes necessary to exhaust its taxing power, not appropriated to other purposes, to raise same, a general creditor can not compel the appropriation of a portion of such taxing power, or the proceeds thereof, to the payment of his claim, to the exclusion of such expenses. (Pp. 15-17.)

**2. Same.**

Courts can not forestall the action of the council by ordering it in advance to levy a portion of the tax available for current expenses to pay a judgment against the city. (P. 16.)

ON REHEARING.

**3. City—Mandamus to Pay Judgment—Questioning Original Cause of Action.**

The validity of the original cause of action on which a judgment was recovered can not be questioned in a suit against a city to require the levy of a tax to pay such judgment. (P. 18.)

**4. Impairing Obligation of Contract—Judgment for Tort.**

A judgment founded upon a tort is not a contract, impairment of the obligation of which is prohibited by section 10 of the Constitution of the United States. (P. 19.)

**5.  Judgment Against City—Repeal of Taxing Power—Due Process of Law.**

Whether a liability for the torts of officers of a city shall be imposed upon property within its limits is a mere matter of governmental policy, which may be changed without giving legal cause of complaint to the holders of such claims, no matter what their form, a judgment for tort being of no higher dignity than the cause of action. (Pp. 18, 19.)

**6.  City—Taxing Power—Repeal Pending Appeal.**

The power of the city of Sherman, containing 10,000 inhabitants, to levy 25 cents on the $100 for the payment of debts contracted prior to January 1, 1889, under Revised Statutes, article 487, was taken away during the pendency of an appeal from a decree requiring a levy of taxes to pay a judgment recovered on a debt of that character, by the enactment of its special charter. Special Laws, 1895, p. 41. Held, that such power, though existing when mandamus was awarded, would not support its affirmance. (Pp. 19-21.)

**7.  City—Mandamus—Payment of Debts.**

Courts can only award mandamus in favor of the holders of a judgment having a claim on the general revenues of a city, requiring the levy of the full amount permitted by law for current expenses, each year, until complainant's judgment is paid, and the payment annually of such of the sums realized from the tax as may not be necessary to pay current expenses. (Pp. 17, 21.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

Plaintiffs, heirs of R. Langham, deceased, sued the city of Sherman to revive a judgment recovered by him against the city and to compel a levy of taxes to pay the same, and obtained the judgment and writ of mandamus sought. The city of Sherman appealed, and on affirmance by the Court of Civil Appeals obtained writ of error. The judgment having been affirmed in accordance with the opinion first rendered, plaintiff in error moved for and obtained a rehearing, calling attention to the provisions of the special charter not before presented, whereupon the second opinion was delivered, reversing and rendering. Defendants in error then filed motion for rehearing, which was overruled, without written opinion, on June 24, 1898.

*Sidney Wilson* and *S. P. Webb*, for plaintiff in error.

*R. R. Hazelwood* and *Wilkins & Vinson*, for defendants in error.

DENMAN, ASSOCIATE JUSTICE.—Langham et al., being the owners of a judgment for $1164 rendered against city of Sherman in the District Court of Grayson County on the 29th day of March, 1889, in an action to recover damages for an injury inflicted in 1888, instituted this proceeding September 6, 1894, to revive said judgment and seeking an order of court compelling the city to pay same, "and if necessary to levy a special tax in an amount sufficient to pay said judgment, interest, and costs, and apply the proceeds of such levy to the payment of said judgment," and for general relief. From the pleadings and agreed statement it appears that Sherman was incorporated as a city of 1000 inhabitants or more under the general law, but the date of its incorporation is not given; that in 1894, acting under the assumption that it contained less

than 10,000 inhabitants its officers levied for various purposes taxes aggregating $1.25 on the $100 valuation; that at the date of the trial of this cause in the court below, on the 29th day of April, 1895, it contained more than 10,000 inhabitants, and no tax for any purpose had been levied for the year 1895; that the revenues derived from said tax of 1894 and other sources were sufficient to meet the current expenses of the city for that year as it was then maintained, said city then acting under the general law for cities of less than 10,000 inhabitants; that the value of the property within the corporate limits is $4,600,000. There is no evidence in the record as to what the expenses of the city would be for the year 1895 or any subsequent year. The trial court entered a judgment for the plaintiffs against the city, reviving the original judgment and directing a peremptory writ of mandamus to issue commanding the officers of the city and their successors "to levy and collect a sufficient ad valorem tax upon the property situated within the corporate limits of said city of Sherman, and subject to taxation by said city of Sherman, to pay said judgment, interest, and costs, and the costs of this suit," said levy to be made at the same time that the other taxes imposed by said city are levied for the year 1895. On appeal by the city to the Court of Civil Appeals that court affirmed the judgment of the trial court and ordered that the officers of said city "do proceed at once to levy and collect a sufficient ad valorem tax upon the property situated within the corporate limits of said city of Sherman to pay said judgment, interest, and costs, and the costs of this appeal." The city has brought the case to this court upon writ of error, assigning as error the action of the Court of Civil Appeals "in affirming the judgment of the trial court and granting the writ of mandamus."

That part of article 487, Revised Statutes, which relates to the question under consideration is as follows: "Cities having more than ten thousand inhabitants may levy, assess, and collect taxes not exceeding one and one-half per cent on the assessed value of real and personal estate and property in the city, not exempt from taxation by the Constitution and laws of the State, * * * and such cities are hereby authorized to levy, assess, and collect a further tax of twenty-five cents on the one hundred dollars' worth of property for the purpose of paying the debts of such city lawfully contracted prior to the first day of January, 1889, not to include any bonded debt."

In awarding the mandamus the trial court and the Court of Civil Appeals proceeded upon the theory that, since the city did not show that it would be necessary to exhaust its entire general taxing power of 1½ per cent in order to raise sufficient funds to defray its current expenses, it had not met the prima facie case made by the plaintiffs by showing their judgment unpaid and unprovided for, and the right of the city to levy said tax.

Where the city council, in good faith, in the exercise of the discretion conferred upon them by law, fix the current expenses of the city at such a sum that it becomes necessary to exhaust its taxing power, not ap-

propriated to other purposes, to raise same, a general creditor can not compel the appropriation of a portion of such taxing power or the proceeds thereof to the payment of his claim to the exclusion of such expenses. All persons who deal or come in contact with the city, without securing the setting aside in the manner provided by law of a portion of its taxing power for the satisfaction of their claims, are charged with notice that the very law which renders the city liable to them, and which might have denied all liability whatever, fixes the current expenses of each year as a first charge on its general revenues for that year. To adopt any other rule "would be to destroy the city. In such case, the creditor would have to wait until a surplus should accrue, just as any other creditor has to wait upon an impecunious debtor. And every creditor is presumed to know the extent of the power to tax, and the means to pay on the part of the city at the time of the contract." Tucker v. City of Raleigh, 75 N. C., 267. If he be not willing to take the only chance of payment held out to him by the very law to which he must look for the city's liability, he has the privilege of not so dealing or coming in contact with the city as to render it liable to him either by contract or tort. If in this case the council had in good faith at the date of the trial below determined the various sums necessary for the various items of current expenses so as to aggregate such an amount that it would require a tax of 1½ per cent to raise same and had levied such tax therefor, it is clear that the court could not have compelled them to set aside any portion of said levy or fund to be derived therefrom for the payment of this judgment to the exclusion of any part of such current expenses; for the court has no power, even at the suit of a creditor, to control or review the honest discretion of the council in determining whether they will in a given year expend a portion of its revenues for a given thing properly classed as current expense, or the amount they will pay therefor. City of Denison v. Foster, 37 S. W. Rep., 167, in which this court refused an application for writ of error; Tucker v. City of Raleigh, 75 N. C., 267; Cromartie v. Commissioners, 87 N. C., 134; East St. Louis v. Zebley, 110 U. S., 321. It follows that the trial court could not forestall the action of the council by ordering it in advance to levy a portion of said 1½ per cent to pay this judgment, for such order if valid would be in effect a judicial determination either that the currrent expenses were not a preference claim on the funds to be derived from such taxing power, or that the council to be assembled for that purpose could not in the exercise of their honest discretion fix the amount to be expended for current expenses at such a sum as to require a tax of 1½ per cent to raise same. The court, by entering the peremptory order to levy out of its 1½ per cent taxing power a sufficient tax to pay the judgment, necessarily to that extent forbade and attempted to control the council in the exercise of its discretion in determining the amount to be raised and expended for current expenses. This we have seen it has no power to do. It is no answer to say that it had only levied 1¼ per cent for 1894 and therefrom had realized

sufficient to meet such expenses as the city was then administered, for in the discretion of the council such expenses both as to items and amounts may vary from year to year. If this were not true a past year could be made to govern all futures ones, and the court could virtually destroy the discretion of the council by ordering the appropriation for a series of years of all that part of the taxing power, not exercised in such past year, to the payment of such judgments as this. Upon this view of the law the writ of error was granted. We are of opinion, however, that the court might have awarded its writ directing the levy of the full 1½ per cent each year, and the payment on the judgment each year of such of the sums realized from such tax as might not be necessary to pay such claims as were already a charge on said taxing power, such as interest and sinking fund on bonds, and such current expenses as the council in its discretion might incur; or might have ordered the exercise, each year, to pay the judgment, of such portion of said 1½ per cent taxing power as might be left after the council had annually made therefrom such levy as in its discretion was necessary to raise funds for current expenses and such levies as were already provided for out of said taxing power, such as provision made for interest and sinking fund on bonds. Therefore, if the city had no other taxing power applicable to this judgment than the 1½ per cent, as seems to be conceded by counsel on both sides and assumed by both of said courts in the disposition of the case, we would be constrained to reform the judgment awarding the mandamus in accordance with the views above expressed.

Since the submission of the cause we have reached the conclusion that the judgment of the Court of Civil Appeals must be affirmed upon the ground that the latter portion of the statute above quoted, authorizing the city "to levy assess and collect a further tax of twenty-five cents on the one hundred dollars' worth of property for the purpose of paying the debts of such city lawfully contracted prior to the first day of January, 1889, not to include any bonded debt," affords ample warrant for same.

The sum necessary to pay this judgment can be raised within the limits of such taxing power, the record does not show that any portion of it has been appropriated to any other claim, and the council have no discretion or power to levy any portion thereof for any purpose other than the payment of "debts lawfully contracted prior to the first day of January, 1889, not to include any bonded debt." The only question that can arise is whether this judgment is a "debt lawfully contracted prior to the first day of January, 1889," within the meaning of said statute. The broad and just purpose of the statute, which was enacted in 1889, was to enable the cities becoming subject to its terms to pay off their lawful obligations incurred prior to January 1st of that year out of funds to be raised by the exercise of this special taxing power, without being compelled to resort to their general and permanent taxing power of 1½ per cent intended to meet their fixed charges, such as current

yearly expenses and bonded debts. It being incorporated into the Revised Statutes, which in its "Final Title" declares that "the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice," we are not at liberty to adopt a narrow construction of same, which would either deprive the city of the power of paying a judgment the justness of which is not questioned, without resorting to its general revenues, which it alleges are all needed for current expenses and other fixed charges, or force plaintiffs below to rely upon the precarious remedy above suggested as the only one open to them for the collection of their claim.

Applying a liberal rule of construction to the statute to effect its purpose, we are of the opinion that the liability of the city to plaintiffs began at the date of the accrual of the cause of action in 1888, and not at the date of the judicial ascertainment thereof by the rendition of the judgment in 1889; that the word "debts" as used in the statute is broad enough to include a liability arising out of either tort or contract (Barber v. City of East Dallas, 83 Texas, 147); that the word "contracted" is used in the statute in the sense of incurred (Smith v. Omans, 17 Wisconsin, 406); and that the legality of the obligation was settled by the rendition of the judgment.

It results that the judgment in this case is a debt of the city "lawfully contracted prior to the first day of January, 1889," and that the council has no discretion but to levy under said special power of taxation a tax sufficient to pay same, and therefore the judgment of the Court of Civil Appeals must be affirmed, though we base our conclusion upon different grounds from those presented to and relied upon by that court as justifying the awarding of the writ.

BROWN, J., not sitting.

Opinion filed March 29, 1897.

### ON MOTION FOR REHEARING.

DENMAN, ASSOCIATE JUSTICE.—We only deem it necessary to notice two of the grounds for rehearing. The first seeks to question the validity of the original cause of action. This was settled adversely to the city by the rendition of the original judgment, and the question can not be raised collaterally in this proceeding to enforce such judgment by mandamus. United States v. New Orleans, 98 U. S., 225. The second raises the question, not heretofore presented, that pending this appeal the Legislature by special act, of which by its terms the courts are required to take judicial notice (Special Laws 1895, p. 41), granted to the city of Sherman a special charter, which declares that it shall levy no tax in excess of $1\frac{1}{2}$ per cent of the taxable property, and distributes such total taxing power among various objects, allowing not to exceed 30 cents on the $100 assessed taxable values "for general

purposes and current expense" (sections 97-102), and that, since this act removes the city from the operation of the provision of the Revised Statutes under which we held in the original opinion that the city was authorized to levy a special tax of 25 cents to pay off indebtedness contracted prior to the first day of January, 1889, therefore we were in error in affirming the judgment of the Court of Civil Appeals ordering the levy of a sufficient tax to pay the judgment. To this it is objected (1) that the judgment is a contract, and that the special charter reducing the power of the city to levy taxes to pay same impairs its obligations and is therefore prohibited by the Constitution of the United States, and (2) that such charter deprives the owner of the judgment of his property therein without due process of law. It has been settled by the Supreme Court of the United States that a judgment founded upon a tort is not a contract within the meaning of the constitutional provision invoked (Louisiana v. Mayor of New Orleans, 109 U. S., 285, cited in Louisiana v. Police Jury, 111 U. S., 720), and hence the first objection is not well taken even if it should be held that a person contracting a debt with a city of less than 10,000 acquires a contract right in the increased taxing power conferred by the charter when such city reaches a population of 10,000. We also understand the decision of that learned court in the case cited to be adverse to the second objection urged above, for it was there said:

"The clause of the fourteenth amendment cited is equally inoperative to restrain the action of the State. Conceding that the judgments, though founded upon claims to indemnity for unlawful acts of mobs or riotous assemblages, are property in the sense that they are capable of ownership and may have a pecuniary value, the relators can not be said to be deprived of them so long as they continue an existing liability against the city. Although the present limitation of the taxing power of the city may prevent the receipt of sufficient funds to pay the judgments, the Legislature of the State may, upon proper appeal, make other provision for their satisfaction. The judgments may also perhaps be used by the relators or their assignees as offsets to demands of the city; at least it is possible that they may be available in various ways. Be this as it may, the relators have no such vested right in the taxing power of the city as to render its diminution by the State, to a degree affecting the present collection of their judgments, a deprivation of their property in the sense of the constitutional prohibition. A party can not be said to be deprived of his property in a judgment because at the time he is unable to collect it.

"The cases in which we have held that the taxing power of a municipality continues, notwithstanding a legislative act of limitation or repeal, are founded upon contracts, and decisions in them do not rest upon the principle that the party affected in the enforcement of his contract rights has been thereby deprived of any property, but upon the principle that the remedies for the enforcement of his contracts, existing when they were made, have been by such legislation impaired. The usual

mode in which municipal bodies meet their pecuniary contracts is by taxation. And when, upon the faith that such taxation will be levied, contracts have been made, the constitutional inhibition has been held to restrain the State from repealing or diminishing the power of the corporation so as to deprive the holder of the contract of all adequate and efficacious remedy. As we have often said, the power of taxation belongs exclusively to the legislative department of the government, and the extent to which it shall be delegated to a municipal body is a matter of discretion, and may be limited or revoked, at the pleasure of the Legislature. But, as we held in Wolff v. New Orleans, at October term, 1880 (XXVI, 395), and repeated in Louisiana v. Pilsbury, at October term, 1881 (XXVI, 1090), in both cases by the unanimous judgment of the court, the legislation in that respect is subject to this qualification, which attends all State legislation, that it 'shall not conflict with the prohibitions of the Constitution of the United States, and, among other things, shall not operate directly upon contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement. Legislation producing this latter result, not indirectly as a consequence of legitimate measures taken, as will sometimes happen, but directly by operating upon those means, is prohibited by the Constitution and must be disregarded—treated as if never enacted—by all courts recognizing the Constitution as the paramount law of the land. This doctrine has been repeatedly asserted by this court when attempts have been made to limit the power of taxation of a municipal body, upon the faith of which contracts have been made, and by means of which alone they could be performed. * * * However great the control of the Legislature over the corporation while it is in existence, it must be exercised in subordination to the principle which secures the inviolability of contracts.' "

It is true that the court withheld the expression of any opinion as to "the effect of legislation upon the means of enforcing an ordinary judgment of damages for a tort rendered against the person committing it in favor of the person injured," but we do not understand such reservation to affect cities like those of this State which have no property and against which no execution can issue, and whose only means of payment is the levy and collection of taxes upon property of others within their limits. In such cases the judgments are virtually against the mass of taxable property within the city; and thereby a legislative policy of compelling the election of proper officers and securing the vigilant performance of their duties is sought to be made effective by imposing upon such property, which is assumed to be owned by their constituents, liability for the tortious acts of such officers. This would seem to be in principle the same policy that imposed such liability for damages done by a mob. It is very questionable if such policy is founded in real justice, for it is not certain that in actual practice the officers are elected by the owners of the property—a majority of whom may have voted for others. However this may be, it is a mere matter of

governmental policy whether it is deemed wise to impose upon such property liability for torts for the commission of which the owners thereof are not responsible, and if such policy be changed the injured party has no legal cause of complaint. It matters not in what shape his claim be when such change is made, it falls with the policy. His judgment can be of no higher dignity than his cause of action, for the judgment is a mere determination of its existence and extent. If the claim can be destroyed by legislation, its collection can be impeded by reducing the taxing power of the city.

We are therefore of the opinion that we erred in affirming the judgment upon the ground that the city had the power to levy the special tax referred to above, and that, according to the reasoning of the first portion of our former opinion herein and the views above expressed, the motion for rehearing must be granted, and the judgments of the trial court and the Court of Civil Appeals be set aside and judgment here rendered directing the officers of the city to levy the full 30 cents on the $100 referred to above as allowed by its special charter each year until the judgment is paid, and to pay over on such judgment each year such of the sums realized from such tax as may not be necessary to defray current expenses.

*Reversed and rendered.*

BROWN, J., not sitting.